UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

REZA MAHRAM, M.D., individually;
DA VINCI MED SPA,  INC., a Florida
corporation,

       Plaintiffs,

v.

HCA-EMCARE HOLDINGS, LLC, a foreign
limited liability company; OLETA RIVER
EMERGENCY PHYSICIANS, LLC, a Florida
limited liability company; MIAMI BEACH
HEALTHCARE GROUP, LTD., a Florida limited
partnership d/b/a AVENTURA HOSPITAL AND
MEDICAL CENTER; MICHAEL MILLER,
M.D., individually,

       Defendants.

_____/

## COMPLAINT

Plaintiffs, Reza Mahram, M.D. ("Dr. Mahram") and Da Vinci Med Spa, Inc. ("Da Vinci"), sue Defendants, HCA-EmCare Holdings, LLC ("EmCare"), Oleta River Emergency Physicians, LLC ("Oleta"), Miami Beach Healthcare Group, Ltd., a Florida limited partnership d/b/a Aventura Hospital and Medical Center ("Aventura Hospital"), and Michael Miller, M.D. ("Dr. Miller") (collectively, "Defendants"), and alleges:

## PARTIES, JURISDICTION, AND VENUE

1.     This is an action for racial and national origin discrimination under 42 U.S.C. § 1981, tortious interference with an advantageous business relationship, and breach of contract.

2.     This action is within the jurisdiction of this Court pursuant to (i) 28 U.S.C. § 1331

**LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

(federal question); (ii) 28 U.S.C. § 1343(a)(4) which confers original jurisdiction upon this Court in a civil actions to recover damages under any Act of Congress providing for the protection of civil rights; and (iii) 28 U.S.C. § 1367 which grants this Court supplemental jurisdiction over the state law claims because they arise out of the same nucleus of operative facts as the federal claims.

3.      Dr. Mahram is licensed to practice medicine in Florida and resides in Florida.

4.      Da Vinci is a Florida corporation with its principal place of business located in North Miami, Florida.

5.      Miami Beach Healthcare Group, Ltd. is a Florida limited partnership with its principal place of business located in Nashville, Tennessee, and it does business in Florida as Aventura Hospital.  At all material times, Aventura Hospital conducted business in Miami-Dade County, Florida.

6.      EmCare is a foreign limited liability company with its principal place of business located in Greenwood Village, Colorado.  EmCare is comprised of two members: EMCare, Inc. and HCA-EMS Holdings, LLC whose principal addresses are also located in Greenwood Village, Colorado.  At all material times, EmCare conducted business in Miami-Dade County, Florida and was Aventura Hospital's agent.

7.      Oleta is a Florida limited liability company with its principal place of business located in Greenwood Village, Colorado.  Oleta is comprised of one member: EHRA Medical Services of Florida, LLC whose principal address is also located in Greenwood Village, Colorado.  At all material times, Oleta conducted business in Miami-Dade County, Florida, and was Aventura Hospital's and EmCare's agent.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

8.      Dr. Miller is licensed to practice medicine in Florida and resides in Florida.  At all material times, Dr. Miller was an employee and/or agent of Aventura Hospital, EmCare and Oleta.

9.      Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b), because the employment practices hereafter alleged to be unlawful were committed in Miami-Dade County, Florida, within the jurisdiction of this Court.

10.     All conditions precedent to the filing of this action have occurred or been waived.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

**A.      Dr. Mahram and Da Vinci**

11.     Dr. Mahram was born in Iran.

12.     In 1985, he immigrated to the United States at the age of 16.

13.     Dr. Mahram attended high school in Melbourne, Florida, and received his undergraduate degree from the University of South Florida.

14.     He later obtained a graduate degree from the University of Miami School of Medicine.

15.     Dr. Miller received his medical training at Emory and is licensed in the State of Florida to practice medicine.

16.     He is the President of Da Vinci and provided medical services through the company.

**B.      Dr. Mahram's Relationship with Defendants**

17.     EmCare, through its affiliate Oleta, entered into a contract with Aventura Hospital to provide licensed physicians to work in Aventura Hospital's emergency room.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

18.     Oleta, in turn, entered into contracts with various physicians to work in Aventura Hospital's emergency room.

19.     Oleta entered into an Independent Contractor Physician Agreement with Da Vinci to hire Dr. Mahram as an emergency medical physician at Aventura Hospital (the "Contract"). A copy of the Contract is attached hereto as Exhibit A.

20.     Pursuant to the Contract, Dr. Mahram provided emergency room medical services to the patients of Aventura Hospital.

21.     Since he began working at Aventura Hospital, Dr. Mahram performed his medical duties impeccably, without so much as a single blemish on his personnel record.

**C.     Defendants' Pattern of Discriminatory Conduct**

22.     In November 2016, EmCare installed a new Emergency Department Services Director at Oleta, Dr. Miller, a recent graduate with only three years of post-residency experience.

23.     Dr. Miller has demonstrated a pattern of discrimination toward Aventura Hospital's emergency room physicians based on their race, national origin and gender.

24.     For example, Dr. Joelle Abitan-Colon was hired as an emergency room physician at Aventura hospital.

25.     She was a well-qualified physician with an excellent personnel record.

26.     Dr. Miller, however, disliked Dr. Abitan-Colon because she was Moroccan and a woman.

27.     Dr. Miller terminated Dr. Abitan-Colon because of her race, national origin and gender.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

28.     Upon information and belief, Dr. Abitan-Colon has already sent a demand letter to Defendants for her wrongful termination and intends to file a lawsuit against them because she was terminated because of her race, national origin and gender.

29.     In addition to his discriminatory treatment of Aventura Hospital's emergency room physicians, Dr. Miller also sexually harassed members of the staff.  Upon information and belief, a sexual harassment complaint was filed against Dr. Miller by an Aventura Hospital staff member.

**D.     Dr. Mahram is Wrongfully Terminated**

30.     Dr. Mahram was also a victim of Defendants' discriminatory employment practices.

31.     On December 19, 2016, Dr. Mahram worked the 1:00 p.m. to 12:00 a.m. shift in Aventura Hospital's triage area.

32.     Dr. Mahram approached Dr. Miller regarding a potential patient-care issue related to the new patient-treatment system Dr. Miller had implemented.

33.     Knowing Dr. Mahram was born in Iran and disliking him because of it, Dr. Miller told Dr. Mahram: "***This is how it is. If you don't like it, you can go back to your country***."

34.     Dr. Mahram returned to his shift, shocked by Dr. Miller's discriminatory remarks.

35.     Dr. Mahram's discriminatory treatment of Dr. Mahram, however, progressed even further.

36.     Just hours after making the discriminatory statement, Dr. Miller sent Dr. Mahram a text message, stating that he had spoken with the CEO of EmCare, Diane Goldenberg, and that

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

they were in "agreement" that Dr. Mahram should be "removed" for "insubordination and inappropriate behavior," "wrap up [his] patients and go home" and "not come back tomorrow."

37.     Given that Dr. Miller's discriminatory statement was made hours earlier, and the fact that Dr. Miller has demonstrated a pattern of discrimination against others physician based on their race and national origin, the removal reasons Dr. Miller stated were pretext.

**E.     EmCare's Interference with Dr. Mahram's New Employment Relationships**

38.     After improperly terminating Dr. Mahram based on his race and national origin, EmCare and Oleta have attempted to coerce Dr. Mahram to quietly "resign," by threatening to have his privileges with EmCare "revoked."

39.     EmCare has attempted to bully Dr. Mahram into signing a document confirming his "resignation" or carry the tarnish of revocation of privileges with him on his medical record indefinitely.

40.     And, whether or not he signed such a document, EmCare has already made it clear to Dr. Mahram that he would never again be able to work for another EmCare hospital.

41.     Essentially, EmCare has "black balled" Dr. Mahram because they dislike his race and national origin.

42.     Since being wrongfully forced out of Aventura Hospital, Dr. Mahram tried to apply for employment at Westside Medical Center ("Westside"), which is another hospital where EmCare has a contract to provide emergency department services.

43.     Dr. Mahram successfully interviewed with the Director of Emergency Department Services of Westside who told Dr. Mahram the "job is yours."

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

44.     Michael Davis, the EmCare Division Client Administrator, learned that Westside agreed to hire Dr. Mahram and instructed Westside not to hire him.

45.     Although Westside had already agreed to hire Dr. Mahram because it was thoroughly impressed by him and his qualifications, Westside informed Dr. Mahram that it could not employ him as a result of EmCare's instructions.

## COUNT I: VIOLATION OF 42 U.S.C. § 1981
### (*Dr. Mahram v. All Defendants*)

46.     Dr. Mahram restates and realleges paragraphs 1 through 45 as if fully set forth herein.

47.     Dr. Mahram, as a native of Iran, is a member of a protected class based on his race and national origin.

48.     Dr. Mahram was qualified to serve as an emergency medical physician at Aventura Hospital.

49.     Defendants, through their employees, agents and representatives, engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981 by creating, condoning and perpetuating a discriminatory and hostile work environment and interfering with Dr. Mahram's contractual rights because of his race and national origin.

50.     Defendants, through their employees, agents and representatives, engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981 by creating, condoning and perpetuating a discriminatory and hostile work environment and interfering with Dr. Mahram's contractual rights because Dr. Mahram was treated less favorably than similarly situated employees outside of Dr. Mahram's protected class.

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

51.     Defendants, through their employees, agents and representatives, acted with malice and reckless disregard for Dr. Mahram's rights under 42 U.S.C. § 1981.

52.     Supervisory personnel of Defendants, including but not limited to Dr. Miller, intentionally subjected Dr. Mahram to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions of Dr. Mahram's employment.

53.     At all material times hereto, Defendants had authority to affect, indirectly or directly, the terms and conditions of Dr. Mahram's employment.

54.     Defendants intentionally subjected Dr. Mahram to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions of his employment and by knowingly failing and refusing to protect Dr. Mahram, and other members of protected classes, from those hostile and abusive conditions.

55.     Defendants' actions, through their employees, agents and representatives reflect a policy, custom, or pattern of official conduct of engaging in and condoning harassment and discrimination:

a.     Defendants' employees intentionally subjected Dr. Mahram to unequal and discriminatory treatment by engaging in repeated and persistent acts of unwelcome and offensive racial discrimination and harassment of Dr. Mahram;

b.     Defendants' employees have engaged in conduct with other employees of other races, national origins and genders who have found such conduct to be unwelcome and offensive;

c.     Supervisors and employees of Defendants' treated Dr. Mahram, and other minority employees in a degrading, offensive and discriminatory manner because

**LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

of their membership in protected classes, and Defendants refused to take corrective action;

d. Dr. Mahram, and other members of the protected classes were subjected to a discriminatory and hostile work environment because of their such memberships, Defendants failed and refused to take corrective action;

e. The actions of Defendants were intentional, willful, and malicious and/or in deliberate indifference for Dr. Mahram's clearly established legal rights as secured by 42 U.S.C. § 1981.

56.    Defendants could not have believed doing nothing was lawful in light of the clearly established law that racial harassment and discrimination was an infringement of legal rights.

57.    The actions of Defendants, through their employees, agents and representatives, in intentionally engaging in and condoning racial harassment and discrimination against Dr. Mahram has caused Dr. Mahram great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

**WHEREFORE**, Dr. Mahram demands entry of a Judgment against Defendants:

a. in an amount of his damages pursuant to 42 U.S.C. § 1981a;

b. punitive damages pursuant to 42 U.S.C. § 1981a(b)(1);

c. attorney's fees pursuant to 42 U.S.C. § 1988(b);

d. costs;

e. prejudgment interest; and

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

f.   all such other relief as the Court deems just and proper.

## COUNT II: TORTIOUS INTERFERENCES WITH ADVANTAGEOUS BUSINESS RELATIONSHIP
### (*Dr. Mahram v. EmCare*)

58.   Dr. Mahram restates and realleges paragraphs 1 through 45 as if fully set forth herein.

59.   Dr. Mahram had an established business relationship with Westside.

60.   Westside had agreed to hire Dr. Mahram for an emergency room medical position.

61.   EmCare became aware that Westside's agreement to hire Dr. Mahram.

62.   EmCare intentionally and unjustifiably interfered with Dr. Mahram's business relationship with Westside by expressly instructing Westside that it could not hire Dr. Mahram.

63.   As a result of EmCare's interference, Westside had to inform Dr. Mahram that he was not permitted to work there.

64.   Dr. Mahram lost his employment opportunity with Westside and was damaged as a result because EmCare intentionally and unjustifiably interfered with Dr. Mahram's relationship with Westside.

**WHEREFORE**, Dr. Mahram requests entry of Judgment against EmCare for damages, plus pre-judgment interest, and such further relief as is just and proper.

## COUNT III: BREACH OF CONTRACT
### (*Da Vinci v. Oleta*)

65.   Da Vinci restates and realleges paragraphs 1 through 45 as if fully set forth herein.

66.   Da Vinci and Oleta entered into the Contract.  Ex. A.

10

67.     The Contract provides that Oleta may terminate the Contract (i) at any time by providing Da Vinci with ninety (90) days prior written notice, and (ii) immediately for "Good Cause" as such term is defined in the Contract.  *Id*. at ¶¶ 4, 5.

68.     Oleta breached the Contract by terminating the Contract without providing Da Vinci with proper notice and/or without Good Cause as required under the Contract.

69.     Da Vinci was damaged as a direct and proximate cause of Oleta's breach of the Contract.

**WHEREFORE**, Da Vinci requests entry of Judgment against Oleta for damages, plus pre-judgment interest, and such further relief as is just and proper

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demands trial by jury.

Dated:  November 8, 2017

Respectfully submitted,

**LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**
*Counsel for Plaintiffs*
Miami Center, 22nd Floor
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 403.8788
Facsimile: (305) 403.8789

By: */s/ Jeffrey C. Schneider, P.A.*
        JEFFREY C. SCHNEIDER, P.A.
        Florida Bar No. 933244
        Primary: jcs@lklsg.com
        Secondary: lv@lklsg.com
        JEZABEL P. LIMA, P.A.
        Florida Bar No: 519431
        Primary E-mail:  jl@lklsg.com
        Secondary E-mail: cod@lklsg.com
        MATTHEW J. MCGUANE
        Florida Bar No: 84473

Primary E-mail:  mjm@lklsg.com
Secondary E-mail: ar@lklsg.com

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Miami Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789